Before STATE INDUSTRIAL BOARD, Respondent.

ERNEST P. MEAD, Respondent, *v.* BUFFALO GENERAL ELECTRIC COMPANY, Impleaded with UTILITIES MUTUAL INSURANCE COMPANY, Appellant.

Third Department, March 4, 1925.

**Workmen's compensation — award — award made on basis of intermittent total disability and partial disability for period of sixty-six weeks — weekly average of wages actually earned during period, claimant working part of time, is not average weekly earning capacity.**

An award of the State Industrial Board covering a period of sixty-six weeks during which the Board found that the claimant was totally disabled intermittently and partially disabled the remainder of the time, based on the weekly average of wages actually earned during that period, the claimant working only part of the time, is erroneous, for the Board did not adopt the right method of determining the average weekly earning capacity of the claimant. Wage earning capacity is not necessarily the equivalent of actual earnings. Neither failure to work nor failure to find work is the equivalent of inability to work.

APPEAL by Utilities Mutual Insurance Company from an award of the State Industrial Board, made on the 10th day of April, 1924.

*A. T. O'Neill*, for the appellant.

*Carl Sherman, Attorney-General [E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

COCHRANE, P. J.:

The accident occurred January 5, 1923. As bearing on the question of compensation the State Industrial Board has made the following findings: " Ernest Mead was totally disabled from January 5, 1923, to January 26, 1923, and from January 26, 1923, to April 2, 1924, he was totally disabled intermittently and partially disabled the remainder of the time as a result of said accidental injury. * * * From January 26, 1923, to April 2, 1924, he

earned as wages $1216.90. This period covered 61 weeks which made an average wage during the period the sum of $19.95 per week. * * * The average weekly wage of Ernest Mead prior to receiving said accidental injury was the sum of $38.46, and the average weekly wage from January 26, 1923, to April 2, 1924, was the sum of $19.95." Compensation is awarded in the language of the Board " for three weeks at the rate of $20.00 per week, covering the period from January 5, 1923, to January 26, 1923, amounting to the sum of $60.00, and for 63 weeks at the rate of $13.01 per week, covering the period from January 26, 1923, to April 10, 1924, amounting to the sum of $819.63, making the total amount due claimant the sum of $879.63." How the Board arrived at the weekly rate of thirteen dollars and one cent is not clear. It is in excess of two-thirds of the difference between the average weekly wages of the claimant before the accident and his average weekly wages thereafter as found by the Board. But whatever the reasoning which leads to a weekly rate of thirteen dollars and one cent, such reasoning is erroneous. The Board finds total disability and partial . disability intermittently. For temporary total disability compensation in this case would be twenty dollars a week. (Workmen's Compensation Law, § 15, subds. 2, 6.) For partial disability, whether permanent or temporary, compensation would be two-thirds of the difference between the average weekly wages of the claimant before the accident and *his wage earning capacity thereafter*. (Workmen's Compensation Law, § 15, subd. 3, ¶ u; Id. § 15, subd. 5.) The wage earning capacity has not been found in this case. It is not necessarily the equivalent of actual earnings. This case presents a good illustration of the difference. Claimant according to his own testimony worked steadily from January 26, 1923, to July thirteenth, with only four days' loss of time. From July twentieth until October twenty-sixth he did not work, although on October fourth four physicians, including two called by himself as witnesses, all testified that he was able to work. After October twenty-sixth he seems to have done little work, although his own physician called as a witness by himself testified on April 10, 1924, that he had treated him from December 10, 1923, until February 9, 1924, and that during all that time he could work except for the first or second week. It does not seem probable from the claimant's testimony that he made an earnest and sincere effort to work or to find work during the time that he was out of work. The Board had a legal right to accept the claimant's contention of inability to work as against the testimony above mentioned including that of his own witnesses, but in such case it is perhaps of more than ordinary importance that the Board strictly conform

to the requirement of the statute and find as the statute requires the earning capacity of the claimant as the basis for an award, and not rest the award on what he actually earned. There is too much room for argument that he might have earned more than he did. Failure to work is not the equivalent of inability to work. Neither is the failure to find work such equivalent. The Board seems not to have observed the distinction. It was not the legislative purpose that so-called periods of intermittent total disability and partial disability should be intermingled and a general average of weekly earnings covering the entire period should be struck as has been done in this case. There has been an entire departure from the plan of the statute.

The award as to the insurance carrier should be reversed and the claim remitted, with costs against the State Industrial Board to abide the event.

All concur.

Award as to the insurance carrier reversed, and claim as to the insurance carrier remitted, with costs against the State Industrial Board to abide the event.